BOARD OF DIRECTORS OF ST. FRANCIS LEVEE DISTRICT *v.* HALE.

Opinion delivered January 6, 1908.

LEVEE—LICENSE TO TAKE EARTH—VERBAL ASSIGNMENT.—If a written agreement of a landowner to furnish the United States a right-of-way and earth necessary for building a levee over his lands authorized the United States, after the levee had been built, to enter upon such land for the purpose of enlarging the levee, a verbal authorization by the officers of the United States to the St. Francis Levee District to take whatever rights the United States had was not sufficient to convey any such rights.

Appeal from Mississippi Circuit Court; *Frank Smith,* Judge; affirmed.

STATEMENT BY THE COURT.

This appeal involves three suits, consolidated and tried in the Mississippi Circuit Court for the Osceola District as one case, *W. P. Hale* v. *Board of Directors St. Francis Levee District*. The suits referred to are as follows: Nos. 305 and 424, in which W. P. Hale was plaintiff and the Board of Directors of St. Francis Levee District was defendant; No. 350, which was a condemnation proceeding in which Board of Directors of St. Francis Levee District was plaintiff and W. P. Hale was defendant.

The question involved in each of the suits is whether or not the lands involved in controversy were a part of the right-of-way of appellant, or belonged to appellee. If the latter, it is agreed that appellee was damaged in the sum of $927.50 by the illegal appropriation of soil from his land for the purpose of enlarging the levee of appellant.

Appellant introduced H. N. Pharr, who testified: "I am chief engineer of the St. Francis Levee District, and have been for the past nine years. The Government and the Board have been constructing the levee in conjunction. They enlarged the levee over these lands in conjunction, and wherever the Government had the right-of-way, and necessarily the dirt, they always authorized the Board to go ahead and take any of the rights they had. That was the case in taking this dirt. I knew of the license or grant given by W. P. Hale to the Government over the northeast quarter of section 19; also of the grant by Dudley Lynch to the Government over the northwest quarter of section 19 and the grant by J. W. Jefferson over the southwest quarter of section 30. I have known about them for about ten years. The Government furnished the Levee Board with a list of them."

The Board offered in evidence the instrument executed by W. P. Hale, dated August 3, 1907, as follows:

"I hereby certify that I will furnish right-of-way and use of earth necessary for building the levee over my land free of cost to the United States.

[Signed]                              W. P. Hale."

Also the instrument executed by Dudley Lynch, dated August 3, 1887, as follows:

"I hereby certify that I will furnish right-of-way and earth

necessary for building the levee over my lands free of costs to the United States.

[Signed]                                                    Dudley Lynch."

Also the agreement of J. W. Jefferson in the form of a letter and reply dated August 16, 1887.

"Col. J. W. Jefferson,
            Hot Springs, Ark.                   .

Sir:—I am requested by Capt. S. S. Leach to enquire whether you are willing to join owners of land between Fletcher's and San Souci, Arkansas, in giving right-of-way and use of earth to the Government to build a levee between these points. The appropriation is conditional upon the landowners granting right-of-way, etc.

                        "Very respectfully your obedient servant,
[Signed]                        "A. E. Symmes, Chief Clerk."

"A. E. Symmes, Esq.,
            Chief Clerk.

Sir:—In reply to the within I take pleasure in complying with the request.

                        "Very respectfully your obedient servant,
[Signed]                                        "J. W. Jefferson."

The plaintiff introduced W. P. Hale, who testified as follows:

"I am plaintiff in this suit. In 1903 the Levee Board did some work down at the Whitmore place, and went outside of any land they had taken before. In 1906 that man Bolivar was here working, and he went out a great deal further on that part of the field. On the Lynch place the levee was built mostly by his own labor. Whenever high water would come, men would run in and help him. In 1884 a number of us in that neighborhood agreed to assess a tax and build a levee, and I gave the right-of-way. About 1887, I think, the Government did· something to it. I think they raised it a little, and then in 1893 the Levee Board took charge of it. They have been taking out dirt, and now they have gone several rods. I have owned the land in section 19, over which I gave the right-of-way to the Government, about thirty years. I think about 1887 the Govern-

ment offered to increase the size of the levee if I would furnish the dirt. This applies to the northeast quarter of 19, which is the only land in controversy that I owned at that time. I knew Dudley Lynch, and was acquainted with the land he owned immediately adjoining mine at that time. I do not recall any general movement among the citizens to give the United States Government either dirt or land to be used in the construction of the levee, and do not recall that any work was done on the Lynch land at that time. There was already a pretty good levee across his lands, most of which was built by Lynch in 1884. I do not remember of ever having heard of Lynch or Jefferson granting any rights over their lands. I never saw any letter signed by Jefferson until a week ago, and I never saw the letter signed by Lynch until it was handed to me during the taking of this deposition, and I have no information or knowledge of the writing of either of these letters. I am not certain that the Government ever did any work through any of these lands. I don't remember being there at any time when the Government was doing any work. I never understood that Lynch or Jefferson had given any right-of-way. I bought what is known as the Jefferson place from W. B. Edrington and his brothers and sisters, and I bought the Lynch place from the Dudley and Lynch heirs. When I bought the lands from the various parties, there was a levee already across them. I supposed the levee was owned by the parties until it was taken charge of by the St. Francis Levee District in 1893. I made no inquiry as to the extent of the right-of-way or the rights of the Levee Board to occupy the lands or to use them. I bought the Lynch lands eight years ago, and I bought the Whitmore place in 1896. I bought the blacksmith lot in 1881."

There was a judgment in favor of appellee, and the Levee Board has appealed.

*H. F. Roleson,* for appellant.

The grant by Hale to the United States was effective to carry the right-of-way and the earth necessary for constructing the levee through the land; and it is shown both that the Government did work there, and that, after the appellant levee district was created in 1893, the two acted in conjunction in en-

larging the levee. At the time he purchased the Jefferson and Lynch tracts, appellant levee district had been organized, and was in charge of them, and it was his duty, since it was apparent even to a casual observer that it had some rights there, to ascertain to what extent its possession and rights extended. 77 Ark. 309; 76 Ark. 25; 66 Ark. 167; 54 Ark. 499; 34 Ark. 391; 33 Ark. 465.

*S. S. Semmes* and *W. J. Lamb,* for appellee.

Cases cited by appellant have no application. That appellee is entitled to recover is settled. 80 Ark. 80.

HART, J., (after stating the facts.) Conceding, without deciding the question, that, under the license or grant given to it by the land owners, the United States Government had the right to take the lands involved in this suit to enlarge its levee, the testimony does not show that appellant succeeded to its rights. The only testimony on that point is that of Pharr, the ·chief engineer of appellant. He testified that the officers of the United States authorized appellant to take any rights the Government had. This verbal direction was not sufficient. The St. Francis Levee District was not created until 1893, several years after the licenses or grants in question were given by the landowners to the United States Government. Appellant does not show how or in what manner it succeeded to the rights of the Government.

Judgment affirmed.